UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN THOMAS BARRETT,

Plaintiff,

v.

KATHLEEN DICKERSON, et al.,

Defendants.

Case No.  14-cv-01923-JST (PR)

**ORDER OF DISMISSAL WITH PARTIAL LEAVE TO AMEND**

### INTRODUCTION

On April 25, 2014, plaintiff, a California prisoner proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights when he was incarcerated at Salinas Valley State Prison (SVSP).[1]  By separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis.  His complaint is now before the court for review under 28 U.S.C. § 1915A.

### BACKGROUND

Plaintiff claims that staff and officials at SVSP improperly delayed his classification hearing, thereby forcing him to remain at SVSP longer than he should have.[2]  His complaint alleges the following:

SVSP is a Level IV Facility.  Level IV prisons are the highest-security prisons in California.  Plaintiff had, on numerous occasions, sought to be transferred to a lower-security prison.  On December 6, 2011, plaintiff had a classification committee hearing where he again requested a transfer.  The classification committee denied the request on the ground that plaintiff's placement score of 55 points was consistent with Level IV housing pursuant to Cal. Code Regs,

---

[1] Plaintiff is currently incarcerated at the North Fork Correctional Facility in Sayre, Oklahoma.

[2] A classification hearing is the process by which the California Department of Corrections and Rehabilitation (CDCR) determines an inmate's placement within a facility as well as eligibility for transfer between facilities.  See 15 C.C.R. § 3375.

United States District Court
Northern District of California

1   tit. 15, § 3375.2.

2        Thereafter, plaintiff studied the classification regulations in effect at the time and learned

3   that a deduction of four points from his placement score would qualify him for transfer to a Level

4   III facility.  Plaintiff also learned that, according to the regulations in effect at the time, if an

5   inmate attained a re-calculated placement score inconsistent with the facility security level where

6   he is housed, a classification committee hearing would have to be held within the six-month

7   period when the new score is granted.  See 15 C.C.R. 3375(k)(1)(B) (2011).  Therefore, an inmate

8   eligible for a facility transfer would not necessarily have to wait for his regular annual

9   classification review.

10        Based on this information, plaintiff stayed out of trouble for the next five-and-a-half

11   months and successfully reduced his placement score.  On May 30, 2012, plaintiff informed

12   defendant Correctional Counselor M. Noland that he would need to be reclassified six months

13   prior to his scheduled annual classification review based on his new placement score.  Defendant

14   Noland denied the request and informed plaintiff that she only conducted annual classification

15   reviews, not six-month reviews.

16        On May 31, 2012, plaintiff filed a CDCR 22 inmate request for interview form, referring

17   defendant Noland to Cal. Code Regs, tit. 15, § 3375(k)(1)(B) (2011).  On June 1, 2012, defendant

18   Noland responded stating that she would adjust plaintiff's points at his next annual classification

19   review hearing, which was scheduled for December 2012.  Plaintiff then forwarded the CDCR 22

20   form to defendant Noland's supervisor, defendant Correctional Counselor E. Ramos.  Defendant

21   Ramos never responded.

22        Thereafter, plaintiff filed a CDCR 602 inmate appeal form complaining of the actions of

23   defendants Noland and Ramos.  The Appeals Coordinator assigned to the appeal re-categorized it

24   from a staff complaint to a custody/classification issue.  Defendant Appeals Coordinator E.

25   Medina and defendant Chief Deputy Warden R. Binkela denied plaintiff's request to process the

26   appeal as an emergency staff complaint.

27        On July 19, 2012, defendant Noland came to plaintiff's cell for an interview.  Defendant

28

1    Noland informed plaintiff that there had been a change in the regulations pertaining to

2    classification, which changes became effective that month.  On July 30, 2012, plaintiff received a

3    first level response to his inmate appeal.  Therein, defendant Ramos and defendant Facility

4    Captain D. Asuncion denied his request for a six-month review and informed him that his case

5    would be reviewed for Level III placement during his regular annual review.  The denial was

6    based on the new classification scoring regulations.

7          On August 28, 2012, plaintiff received a second level response, signed by defendant Chief

8    Deputy Warden J. Soto.  The response again denied the request for a six-month review and found

9    it appropriate for plaintiff to wait until his scheduled annual review in December 2012.  The

10   response clarified the grounds for the decision by explaining that inmates were not entitled to a

11   six-month or special review to implement the new classification scoring system that went into

12   effect in July 2012.

13         On November 6, 2012, plaintiff received a third level response, signed by defendant

14   Appeals Examiner K.J. Allen and defendant Chief of Appeals J.D. Lozano.  The response denied

15   plaintiff's appeal again on the ground that there was no requirement for a six-month review for

16   transfer consideration regarding the new classification scoring system.  The response exhausted

17   plaintiff's administrative remedies.

18         Plaintiff asserts that it was improper to use the new classification scoring system as the

19   basis for denying his request because it was not yet in effect on May 31, 2012 when plaintiff

20   originally made his request.  Although plaintiff was apparently granted a transfer at his December

21   2012 hearing, he alleges that defendants' acts left him to suffer in a Level IV prison for an

22   additional 8 months.  Plaintiff alleges claims for due process and equal protection violations as

23   well as for retaliation.

24                                  **DISCUSSION**

25   A.    Standard of Review

26         A federal court must conduct a preliminary screening in any case in which a prisoner seeks

27   redress from a governmental entity or officer or employee of a governmental entity.  See 28

28

United States District Court
Northern District of California

3

U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Pro se pleadings must, however, be liberally construed.  See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim for relief that is plausible on its face."  Id. at 1974.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

B.    Legal Claims

1.    Due Process

Plaintiff states a Due Process claim as follows:

The refusal of defendants to abide by and enforce the rules and regulations of the California Code of Regulations, Title 15, in a non-arbitrary manner, violated plaintiff's state-created rights and constituted a due process violation under the Fourteenth Amendment to the United States Constitution.

(Compl. at 14.)

Interests that are procedurally protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states.  Meachum v. Fano, 427 U.S. 215,

United States District Court
Northern District of California

4

223-27 (1976).  In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs).  A state may not impose such changes without complying with minimum requirements of procedural due process.  Id. at 484.

Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance."  Id. at 477-87.  Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," id. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," id. at 487.

Because California has created regulations from which a protected interest in transfer within the state prison system could arise, in accord with Sandin the next question must be (1) whether the statutes narrowly restrict the power of prison officials to deny inmates a transfer, and (2) whether the deprivation suffered due to denial of a transfer request is one of "real substance."

In California, there are no substantive limitations on prison officials' discretion to grant or refuse the transfer of prisoners.  See Cal. Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379; People v. Lara, 155 Cal. App. 3d 570, 575-76 (1984).  Procedural requirements, even if mandatory, cannot provide the basis for a constitutionally protected liberty interest.  See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993).  Because the statutory language does not meet the first prong of the Sandin test, no protected liberty interest requiring constitutional protection is created.

Further, plaintiff does not allege that he was denied a liberty of "real substance."  The only

5

deprivation he alleges is a delay in the processing of his request for transfer to a lower-security prison.  In other words, plaintiff remained at SVSP longer than he desired.  Thus by definition, plaintiff did not suffer a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  The fact that he remained housed at a Level IV prison does not place him outside "the ordinary incidents of prison life."  Id.  See also, Myron v. Terhune, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for California Level IV prison rather than Level III prison not shown to be an atypical and significant hardship).  Nor does the complaint allege a state action affecting the duration of plaintiff's sentence.  Because the alleged deprivation does not meet the second prong of the Sandin test, no protected liberty interest requiring constitutional protection is created.

Accordingly, plaintiff has no viable due process claim with respect to the denial of his request for a transfer, and this claim is dismissed.  Dismissal will be without leave to amend, as any amendment for the purpose of stating a constitutional claim under the circumstances alleged herein would be futile.  See Janicki Logging Co. v. Mateer, 42 F.3d 561, 566 (9th Cir. 1994) (holding leave to amend need not be granted where amendment constitutes exercise in futility).

       2.    Equal Protection

Plaintiff states an Equal Protection claim as follows:

> The refusal of defendants to extend to plaintiff all the rights and privileges available to other prisoners of the same class, violated his state-created rights and constituted a violation under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

(Compl. at 15.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982).  A plaintiff alleging denial of equal protection under section 1983, therefore, must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by others similarly situated," and that the treatment complained of was under color of state law.  Van

Pool v. City and County of San Francisco, 752 F. Supp. 915, 927 (N.D. Cal. 1990) (citations omitted).

When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates.  More v. Farrier, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir. 1990) (same).  The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs.  Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.  Id. at 1031 (affirming district court's grant of defendants' motion for summary judgment because inmate failed to raise triable issue of fact that he was treated differently than any other inmate whom the officers did not know was entitled to a vegetarian meal).

Plaintiff's equal protection claim is deficient.  The classification scoring system of section 3375 of Title 15 of the California Code of Regulations is a departmental policy that applies to every California inmate.  Other than plaintiff's conclusory references to other prisoners receiving different rights, there is no allegation or indication that plaintiff was treated differently from other similarly situated individuals, i.e., inmates who had a change in placement score in the six-month period prior to the July 2012 change in placement classification regulations.  Further, according to the complaint, defendants denied plaintiff's requests for a six-month hearing on the ground that there was no requirement for a six-month review for transfer consideration to implement the new classification system.  This is not enough to allege intentional invidious discrimination.

Accordingly, plaintiff's equal protection claim is dismissed.  Leave to amend is granted so that plaintiff may attempt to allege a plausible equal protection claim, if he truthfully can do so.

3.      Retaliation

Plaintiff states a retaliation claim as follows:

> Defendants flagrantly retaliated against plaintiff in the form of threats, adverse manipulation of the classification process and turn a blind eye approach by superiors, causing him to feel fear and intimidation for exercising his right to file prison grievances and thus constituting a violation under the First Amendment of the United States Constitution.

(Compl. at 16.)  Plaintiff does not identify the alleged threats, and it is unclear what he means by "manipulation of the classification process."  Plaintiff appears to base his retaliation claim on defendants' denial of his inmate appeals, which denial was based on the classification scoring system that went into effect in July 2012.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts.  See Mt Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Retaliation is not established simply by showing adverse activity by a defendant after protected speech; rather, the plaintiff must show a nexus between the two.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").  See generally Reichle, et al. v. Howards, 132 S.Ct. 2088, 2097-98 (2012) (Ginsburg, J. concurring) (finding no inference of retaliatory animus from Secret Service agents' assessment whether the safety of the person they are guarding is in danger); Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 901 (9th Cir. 2008) (finding no retaliation where plaintiff presented no evidence that defendants gave her a traffic citation after defendants read a newspaper article about her First Amendment activities, rather than because she drove past a police barricade with a "road closed" sign on it); Huskey, 204 F.3d at 899 (summary judgment proper against plaintiff who could only speculate that adverse employment decision was due to his negative comments about his supervisor six or seven months earlier).

United States District Court
Northern District of California

8

1    Plaintiff claims that defendants retaliated against him for filing an inmate appeal, but fails

2    to allege any facts that elevate his allegations to the level of a plausible retaliation claim.  The

3    denial of an inmate's appeal does not alone imply retaliation.  Plaintiff alleges no facts suggesting

4    that defendants denied his request for a six-month review because of plaintiff's protected conduct

5    rather than for departmental reasons, or that the action chilled plaintiff's First Amendment rights,

6    or that the action did not reasonably advance a legitimate correctional goal.

7    Accordingly, plaintiff's retaliation claim is dismissed.  Leave to amend is granted so that

8    plaintiff may attempt to allege a plausible retaliation claim, if he truthfully can do so.

9        4.    <u>Defendant Dickerson</u>

10    In addition to the above-mentioned defendants, plaintiff names as a defendant CDCR

11    Director Kathleen L. Dickerson ("Dickerson").  None of the allegations in the complaint link

12    Dickerson to any of plaintiff's claims.  Plaintiff merely states that Dickerson "is legally responsible

13    for the overall operation of the Department and each institution under its jurisdiction, including

14    Salinas Valley State Prison."  (Compl. at 2.)

15    Under no circumstances is there vicarious liability under § 1983.  Or, in layman's terms,

16    under no circumstances is there liability under § 1983 solely because one is responsible for the

17    actions or omissions of another.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>Ybarra v.</u>

18    <u>Reno Thunderbird Mobile Home Village,</u> 723 F.2d 675, 680-81 (9th Cir. 1984).  A supervisor

19    may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional

20    deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and

21    the constitutional violation.  <u>Henry A. v. Willden</u>, 678 F.3d 991, 1003-04 (9th Cir. 2012); <u>Starr v.</u>

22    <u>Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011).

23    Because there is no vicarious liability under § 1983 and plaintiff does not include

24    allegations showing that Dickerson was personally involved in the constitutional deprivations or

25    that there is a causal connection between Dickerson's conduct and the constitutional violations, the

26    claims against Dickerson are dismissed.  Plaintiff is granted leave to amend to add allegations to

27    remedy the noted deficiency, if he truthfully can do so.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court hereby orders as follows:

1.      Plaintiff's due process claim is DISMISSED <u>without</u> leave to amend.

2.      Plaintiff's equal protection and retaliation claims are DISMISSED <u>with</u> leave to amend.  Plaintiff's claims against defendant Dickerson are also DISMISSED <u>with</u> leave to amend.

3.      If plaintiff can cure the pleading deficiencies described above, he shall file a FIRST AMENDED COMPLAINT within **thirty (30) days** from the date this order is filed.  The amended complaint must include the caption and civil case number used in this order (C 14-1923 JST (PR)) and the words FIRST AMENDED COMPLAINT on the first page.  **Failure to file an amended complaint within thirty days and in accordance with this order will result in a finding that further leave to amend would be futile, and this action will be dismissed.**

4.      Plaintiff is advised that the amended complaint will supersede the original complaint and all other pleadings.  Claims and defendants not included in the amended complaint will not be considered by the Court.  <u>See</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.  But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

5.      It is plaintiff's responsibility to prosecute this action.  Plaintiff must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

/ / /

/ / /

/ / /

/ / /

/ / /

1      6.       The Clerk shall send plaintiff a blank civil rights form along with his copy of this

2  order.

3      **IT IS SO ORDERED.**

4  Dated:  July 23, 2014



                                        JON S. TIGAR
                           United States District Judge

United States District Court
Northern District of California