UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN THOMAS BARRETT,

    Plaintiff,

  v.

KATHLEEN DICKERSON, et al.,

    Defendants.

Case No. 14-cv-01923-JST (PR)

**ORDER OF DISMISSAL**

## INTRODUCTION

On April 25, 2014, plaintiff, a California prisoner proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights when he was incarcerated at Salinas Valley State Prison (SVSP).[1] On July 24, 2014, the Court screened plaintiff's complaint, and dismissed it with leave to amend. On August 25, 2014, plaintiff filed his first amended complaint (FAC). For the reasons that follow, the Court now DISMISSES the FAC with prejudice.

## BACKGROUND

Plaintiff claims that staff and officials at SVSP improperly delayed his classification hearing, thereby forcing him to remain at SVSP longer than he should have.[2] Plaintiff does not include background facts in his FAC. Therefore, the following allegations are taken from his original complaint:

SVSP is a Level IV Facility. Level IV prisons are the highest-security prisons in California. Plaintiff had, on numerous occasions, sought to be transferred to a lower-security

---

[1] Plaintiff is currently incarcerated at the North Fork Correctional Facility in Sayre, Oklahoma.

[2] A classification hearing is the process by which the California Department of Corrections and Rehabilitation (CDCR) determines an inmate's placement within a facility as well as eligibility for transfer between facilities. See 15 C.C.R. § 3375.

1    prison. On December 6, 2011, plaintiff had a classification committee hearing where he again
2    requested a transfer. The classification committee denied the request on the ground that plaintiff's
3    placement score of 55 points was consistent with Level IV housing pursuant to Cal. Code Regs,
4    tit. 15, § 3375.2.

5    Thereafter, plaintiff studied the classification regulations in effect at the time and learned
6    that a deduction of four points from his placement score would qualify him for transfer to a Level
7    III facility. Plaintiff also learned that, according to the regulations in effect at the time, if an
8    inmate attained a re-calculated placement score inconsistent with the facility security level where
9    he is housed, a classification committee hearing would have to be held within the six-month
10   period when the new score is granted. See 15 C.C.R. 3375(k)(1)(B) (2011). Therefore, an inmate
11   eligible for a facility transfer would not necessarily have to wait for his regular annual
12   classification review.

13   Based on this information, plaintiff stayed out of trouble for the next five-and-a-half
14   months and successfully reduced his placement score. On May 30, 2012, plaintiff informed
15   defendant Correctional Counselor M. Noland that he would need to be reclassified six months
16   prior to his scheduled annual classification review based on his new placement score. Defendant
17   Noland denied the request and informed plaintiff that she only conducted annual classification
18   reviews, not six-month reviews.

19   On May 31, 2012, plaintiff filed a CDCR 22 inmate request for interview form, referring
20   defendant Noland to Cal. Code Regs, tit. 15, § 3375(k)(1)(B) (2011). On June 1, 2012, defendant
21   Noland responded stating that she would adjust plaintiff's points at his next annual classification
22   review hearing, which was scheduled for December 2012. Plaintiff then forwarded the CDCR 22
23   form to defendant Noland's supervisor, defendant Correctional Counselor E. Ramos. Defendant
24   Ramos never responded.

25   Thereafter, plaintiff filed a CDCR 602 inmate appeal form complaining of the actions of
26   defendants Noland and Ramos. The Appeals Coordinator assigned to the appeal re-categorized it
27   from a staff complaint to a custody/classification issue. Defendant Appeals Coordinator E.
28   Medina and defendant Chief Deputy Warden R. Binkela denied plaintiff's request to process the

1    appeal as an emergency staff complaint.

2    On July 19, 2012, defendant Noland came to plaintiff's cell for an interview. Defendant
3    Noland informed plaintiff that there had been a change in the regulations pertaining to
4    classification, which changes became effective that month. On July 30, 2012, plaintiff received a
5    first level response to his inmate appeal. Therein, defendant Ramos and defendant Facility
6    Captain D. Asuncion denied his request for a six-month review and informed him that his case
7    would be reviewed for Level III placement during his regular annual review. The denial was
8    based on the new classification scoring regulations.

9    On August 28, 2012, plaintiff received a second level response, signed by defendant Chief
10   Deputy Warden J. Soto. The response again denied the request for a six-month review and found
11   it appropriate for plaintiff to wait until his scheduled annual review in December 2012. The
12   response clarified the grounds for the decision by explaining that inmates were not entitled to a
13   six-month or special review to implement the new classification scoring system that went into
14   effect in July 2012.

15   On November 6, 2012, plaintiff received a third level response, signed by defendant
16   Appeals Examiner K.J. Allen and defendant Chief of Appeals J.D. Lozano. The response denied
17   plaintiff's appeal again on the ground that there was no requirement for a six-month review for
18   transfer consideration regarding the new classification scoring system. The response exhausted
19   plaintiff's administrative remedies.

20   Plaintiff asserts that it was improper to use the new classification scoring system as the
21   basis for denying his request because it was not yet in effect on May 31, 2012 when plaintiff
22   originally made his request. Although plaintiff was apparently granted a transfer at his December
23   2012 hearing, he alleges that defendants' acts left him to suffer in a Level IV prison for an
24   additional 8 months.

25   In his original complaint, plaintiff alleged claims for due process and equal protection
26   violations as well as for retaliation. The Court dismissed plaintiff's due process claim with
27   prejudice but granted plaintiff leave to amend his equal protection and retaliation claims.

28

3

# DISCUSSION

A.  Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted). Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 1974.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

B.  Legal Claims

1.  Equal Protection

In his original complaint, plaintiff alleged an equal protection claim as follows:

Defendants flagrantly retaliated against plaintiff in the form of threats, adverse manipulation of the classification process and turn a blind eye approach by superiors, causing him to feel fear and intimidation for exercising his right to file prison grievances

4

and thus constituting a violation under the First Amendment of the United States Constitution.

(Compl. at 16.)

It was explained to plaintiff that the complaint did not state an equal protection claim because there was no allegation or indication that plaintiff was treated differently from other similarly situated individuals, i.e., inmates who had a change in placement score in the six-month period prior to the July 2012 change in placement classification regulations. Further, there was no allegation of intentional invidious discrimination.

In the FAC, plaintiff alleges the following:

Upon information and belief, plaintiff alleges that his treatment was invidiously dissimilar to that of other inmates of his same class; who had a change in placement score during the six month period prior to the July 2012 change in placement classification regulations, as CCI M. Noland allowed many of those inmates to benefit from the state-created rights, privileges, and incentives she arbitrarily denied him.

Plaintiff asserts that prior to July 2012, racial tensions between black and Hispanic inmates lead to early classification review hearings for many participants of the resultant violence.

(FAC at 7-8.)

Although the new allegations are slightly more specific, the FAC does not correct the deficiencies identified in plaintiff's original complaint. First, plaintiff's assertion that "many" inmates of a different race from him received "early classification review hearings" remains too conclusory. The allegations do not give defendants fair notice of plaintiff's claims such that they could prepare a meaningful response. Indeed, plaintiff does not claim that the "black and Hispanic inamtes" are the alleged "other inmates" who "had a change in placement score during the six month period prior to the July 2012 change"; and it seems implausible that inmates who engaged in violence could be similarly-situated to plaintiff, who specifically bases his claim on the assertion that he remained discipline-free in the months prior to July 2012, thus entitling him to a lower placement score. Even accepting plaintiff's allegations of disparate treatment as true, he still fails to allege that any such treatment was intentionally invidious toward him.

Accordingly, the Equal Protection claim will be dismissed without further leave to amend.

2. Retaliation

In his original complaint, plaintiff alleged a retaliation claim as follows:

> Defendants flagrantly retaliated against plaintiff in the form of threats, adverse manipulation of the classification process and turn a blind eye approach by superiors, causing him to feel fear and intimidation for exercising his right to file prison grievances and thus constituting a violation under the First Amendment of the United States Constitution.

(Compl. at 16.)

It was explained to plaintiff that "[w]ithin the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). To prove retaliation, a plaintiff must show that the defendants took adverse action against him or her that "would have chilled or silenced a person of ordinary firmness from future First Amendment activities." White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (citing Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)). Plaintiff was advised that the denial of an inmate's appeal does not alone imply retaliation.

In his FAC, plaintiff alleges the following:

> Plaintiff alleges that defendant, CCI M. Noland, retaliated against him for filing a staff complaint against her, on 6-18-2012.
>
> Plaintiff alleges that defendant, CCI M. Noland, knew she was a party to the complaint, but chose to come to plaintiff's cell; under the guise of an unrequested interview, on 7-19-2012, to state in a threatening, matter of fact tone, "Like I told you, I only conduct annual review hearings."
>
> Plaintiff asserts that the message the unrequested visit sent was that she could do whatever she wanted and there was nothing he could do about it.

(FAC at 10-11.)

Here, plaintiff concedes that defendant Noland interviewed him in response to his inmate grievance requesting a re-classification review. There are no facts alleged suggesting defendant Noland or any other defendant took retaliatory action, or that any such action chilled plaintiff's First Amendment rights, or that the action did not reasonably advance a legitimate correctional goal. Nor do Noland's alleged disparaging remarks suffice to state a retaliation claim. Allegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C.

§ 1983. See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Rutledge v. Arizona Bd. of Regents, 660 F.2d 1345, 1353 (9th Cir. 1981); see, e.g., Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment).

Plaintiff further alleges that defendant Binkela retaliated against him by re-categorizing plaintiff's grievance from a staff complaint to a custody/classification issue and that defendants Medina, Asuncion, Soto, Allen, and Lozano all retaliated by proceeding to deny plaintiff's grievance at its various levels of review. (FAC at 11-12.) Such claims are not cognizable under Section 1983 because it is well-established that there is no constitutional right to a prison administrative appeal or grievance system. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."). Consequently, an incorrect decision on an administrative appeal or a failure to handle it in a particular way does not amount to a violation of plaintiff's constitutional rights. See id.

Accordingly, the retaliation claim will be dismissed without further leave to amend.

## CONCLUSION

For the foregoing reasons, this case is DISMISSED because the FAC fails to state a cognizable claim for relief. Further leave to amend will not be granted because the Court already has explained to plaintiff the specific deficiencies in his pleading, and he has been unable or unwilling to correct them.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December 8, 2014

JON S. TIGAR
United States District Judge